### In re UNION LEAGUE BLDG. CORPORATION.

### UNION LEAGUE OF MICHIGAN v. UNION GARDIAN TRUST CO.

No. 7006.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1936.

S. S. Willis and E. A. Rich, both of Detroit, Mich. (Rich & Willis and Emmons, Orin, Sleeper & Krise, all of Detroit, Mich., on the brief), for appellant.

Alan Joslyn, of Detroit, Mich. (Joslyn, Joslyn & Joslyn, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

On January 30, 1932, Union League Building Corporation filed its voluntary petition in bankruptcy and was adjudicated a bankrupt. Union League of Michigan, appellant, filed its proof of claim in the sum of $160,346.11. Upon objection by Union Guardian Trust Company, the trustee, the claim was disallowed by the referee. Appellant sought a review, and the. referee certified the question presented with a summary of the evidence. The court confirmed the order of the referee.

The facts are that appellant is a nonprofit corporation operating a club for social purposes. In November, 1927, and August, 1928, respectively, it procured leases upon two pieces of property. One was executed by the Lothrop Estates Company and the other by Edward J. Schmidt, as lessors with appellant as lessee, in each lease. The leases were for 99 years each, and called for an aggregate rental of $47,590, and required the payment of taxes by the lessee.

Appellant appropriated the funds to be realized from founder memberships, together with certain funds already derived from that source, to defray the rentals and the cost of erection of a clubhouse on the leased premises. The Union Trust

Company of Detroit was made a depository for these funds. Appellant through its officers and directors then made detailed plans for the building, including the selection of an architect, the financial setup, and a detailed statement showing costs, financing, fixed charges, earnings, and expenses, and, after a full consideration of these plans, it was finally determined that the project could best be carried out by the organization of a separate building corporation, and appellant appointed a finance committee to take subscriptions for its capital stock.

On November 1, 1929, the new corporation (the bankrupt herein) filed its articles of incorporation under the name and style of "Union League Building Corporation." Its authorized capital was $500,000, of which $300,000 was subscribed. and $50,000 paid in cash. It was a profit-sharing corporation with powers to deal in real estate generally. Its incorporators were officers and directors of appellant, but it does not appear that all of its stockholders were also stockholders of appellant.

On November 7, 1929, appellant assigned the Lothrop and Schmidt leases to the building corporation. The consideration for the assignment was the building corporation's promise and agreement to pay appellant the sum of $111,135, the amount appellant had invested in the property up to that date. The building corporation immediately thereafter began construction of the clubhouse.

On July 16, 1930, the building corporation leased to appellant for club purposes for a ten-year term commencing January 1, 1930, the premises covered by the Lothrop and Schmidt leases, the first floor of the building, with the exception of the club entrances and washrooms, being excluded therefrom. The first condition of this lease was that appellant leased the premises for the entire term for $1,750,000, payable in advance, in equal monthly installments, beginning January 1, 1930. Other significant provisions followed, to wit:

"Eighth: The lessee has hired the demised premises after examination of their present condition (unless otherwise specifically agreed upon in writing) and without any representations on the part of the lessor or any of its agents."

"Thirteenth: It is expressly understood by the Lessee that the demised premises are, at the date hereof, not ready for occupancy by the Lessee, and that the said demised premises will not be ready for occupancy by the Lessee until such time as the building being constructed on the demised premises by the Lessor is fully constructed, erected and completed, and the Lessee hereby expressly covenants and agrees that this Lease shall not be affected thereby, nor shall the Lessee have any claim against the Lessor by reason thereof."

"Eighteenth: It is understood and agreed by and between the Lessor and the Lessee that during the construction of the building which the Lessor is erecting upon the demised premises, the Lessor shall have possession of the demised premises for the purpose of such construction until the said building is fully erected and completed; it being expressly understood and agreed that this lease shall not in any way be affected thereby."

Prior to the lease appellant advanced the building corporation $49,211 in cash as rentals. This sum, plus the $111,135 owing the appellant by the building corporation on its assignment (and aggregating the amount of appellant's claim), was credited under the fifteenth paragraph of the lease upon the last year's rental, as follows:

"Fifteenth: The Lessor hereby acknowledges receipt from the Lessee of the sum of One Hundred Seventy-five Thousand ($175,000.00) Dollars, which said sum shall be, and is hereby, applied by the Lessor in payment of the last year's rental under this lease, and which said sum shall in no event be recoverable by the Lessee from the Lessor."

It is not clearly shown how the difference between the amount of appellant's claim and the $175,000 mentioned in paragraph 15 was accounted for.

In July, 1931, the building corporation abandoned the construction work and informed appellant that it was unable to complete it for lack of funds and because of the general depression in business. Bankruptcy followed in January, 1932.

The basis of appellant's claim is that the abandonment of the work by the building corporation and its subsequent adjudication in bankruptcy constituted a failure of consideration, which entitled appellant to recover the amount of its claim, $160,346.11.

The claim was disallowed upon three grounds: (1) That appellant and the bankrupt were identical in so far as the rights of creditors were concerned; (2) that the quoted paragraphs of the lease precluded a recovery; and (3) that the failure of appellant to pay the rentals called for, except as above set out, precluded it from recovering upon a subsequent breach by the bankrupt in not completing the clubhouse.

We think it unnecessary to pass upon the first and third grounds, because we regard the second as controlling. Upon the assumption that appellant and the bankrupt were distinct legal entities, each acting for itself, it is manifest that the lease by its own terms destroys the claim.

The lease is unambiguous. It does not disclose that the bankrupt ever obligated itself to complete the clubhouse. Appellant took the premises in the condition in which it found them after examination (construction work having just commenced) and without any representations on the part of the bankrupt. It was expressly understood that the premises would not be ready for occupancy until the building was completed and until that time the bankrupt was entitled to possession. Appellant "expressly covenanted and agreed" that this should not affect the lease nor give rise to any claim against the lessor.

Notwithstanding these conditions, appellant agreed to pay the rentals monthly in advance, for the entire term, and agreed to the specific provision that the payment which it seeks to recover should be applied upon the last year's rental and should *in no event be recoverable by the lessee from the lessor."* (Italics ours.)

We are not concerned with the events out of which the agreement arose. The lease itself may have been improvident, but the parties were competent to execute it. Appellant urges upon us certain provisions of it, to wit: (1) That the lessee should "keep said premises in good condition and safe and proper repair and in tenantable order during the term, and to make all repairs inside and outside"; (2) that the lessee should not "use or occupy the premises for any other purpose than above set forth * * *" (occupancy as a clubhouse); (3) that the lessee should not "make any alterations in or about said premises without the lessor's con-

sent" or "suffer any act * * * on the demised premises which will increase the rate of insurance or cause a cancellation of any policy of insurance of any nature thereon"; (4) that "all repairs, alterations and additions made either by the lessor or the lessee to the demised premises shall be the property of the lessor and remain upon and be surrendered with the premises as a part thereof at the termination of the lease." Appellant contends that these provisions, read in connection with the entire lease, evidence an understanding that the bankrupt was obligated to complete the building. Even if this be true, a question we need not decide, the obligation did not affect the substantive provisions of the lease above referred to or in any wise annul the specific agreement that appellant's claim "shall in no event be recoverable."

The order of the District Court is affirmed.